UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH T. DEAN and REBECCA P. DEAN,

       Plaintiffs,                                        Case No. 05-60287

v.                                                    Honorable John Corbett O'Meara

PAUL SHAMO and TAYLOR FORD, INC.,

       Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the court in a two-day, non-jury trial during which time the court heard testimony regarding plaintiffs Joseph T. and Rebecca P. Dean's claims against defendants Paul Shamo and Taylor Ford, Inc., following a boating accident near Harrison Township, Michigan. The court has exclusive jurisdiction over the claims, as federal maritime law applies.

Testimony was heard and evidence was entered May 22 and 23, 2007. At the conclusion of trial, the court ordered the parties to submit proposed findings of fact and conclusions of law by June 29, 2007. Defendant Taylor Ford complied on June 11, 2007; Plaintiffs filed theirs June 27, 2007; and defendant Shamo filed his June 28, 2007. The parties subsequently filed motions to re-open proofs to file supplemental medical records; and the court has granted those motions, thereby making the exhibits attached to those motions part of the trial record.

## FINDINGS OF FACT

1. Plaintiff Joseph T. Dean ("Dean") was 45 years old at the time of the boating accident; he and his wife Rebecca, also a named plaintiff in this action, had been married for 24 years. The couple has three teenage children.

2. Joseph Dean had been employed by Ford Motor Company since 1985, was promoted a number of times, and had attained the position of Regional Manager.

3. Rebecca Dean is a registered nurse and had practiced nursing during the first 12 years of the Deans' marriage.

4. Defendant Paul Shamo is the president of defendant Taylor Ford, an automobile dealership.

5. Because Dean had been instrumental in Shamo's acquisition of the dealership, Shamo asked Dean to intercede for him in order to iron out some of the problems Shamo had with Ford Motor Company; and the two made a plan to meet "off-site" to discuss those issues.

6. Through Lou Shamo Leasing, Inc., Shamo was the leasee of a 37-foot boat named *Top Gun* that he parked at his home on a canal near Metropolitan Beach.

7. On the afternoon of August 11, 2205, Dean went to Shamo's residence, where they boarded the boat along with Tony Wolf, another Ford Motor employee, and traveled to Jack's Waterfront Restaurant in St. Clair Shores.

8. Throughout the day and into the evening, they ate and drank at Jack's and were joined at various times by other customers of Shamo and Taylor Ford. The bill for the day's refreshments totaled $563.74. Shamo paid the bill and later was reimbursed by Taylor Ford.

9. At approximately 9:30 p.m., they left Jack's by boat, with Shamo at the helm, to return to Shamo's residence.

10. As he approached the entrance to Metropolitan Beach, Shamo was traveling at approximately 60 m.p.h. He hit a 9-foot jetty; and the boat became airborne, clearing a 5-foot bike path and landing in a picnic area adjacent to a tree about 100 feet from the shoreline.

11. Upon impact, Dean was ejected approximately 15 feet from the boat and sustained serious injuries.

12. Police officers found that Shamo was visibly intoxicated at the time of the accident. Failing a sobriety test administered to him, his blood alcohol content was in excess of 0.22%. He was later charged with operating a watercraft under the influence and causing serious injury.

13. Dean's initial injuries included a fracture of the left leg that was open and comminuted, traumatic brain injury as indicated on CAT scan, a severe fracture of his left elbow, and collapsed lungs. It was later discovered that he had a fracture of his fifth cervical vertebrae.

14. Following a number of surgeries on his left leg and elbow and six weeks' hospitalization, Dean returned home to recuperate.

15. Dean remained off work for six months, during which time his mobility was severely limited. He took his meals in bed and did not have the strength or mobility to get out of bed to perform

bodily functions. A chairlift was installed in the home so that he could eventually gain access to the upstairs, and ramps were constructed both inside and outside the home.

16. Throughout this time, plaintiff Rebecca Dean, a registered nurse, attended to her husband's medical needs daily. Her tasks were particularly difficult during the several months that his leg was held in place with an external fixator, as the wounds surrounding the pins had to be cleaned regularly.

17. Dean also suffered through a difficult period of depression and drug withdrawal from prescription pain medication. As a result, he now chooses to deal with the pain without the benefit of such medications.

18. Before the boating accident, Dean enjoyed a number of activities that are now either difficult or nearly impossible for him to perform, including: gardening, landscaping, remodeling, household repairs, woodworking, golf, and barbequing.

19. Although Dean demonstrated a steady climb through the ranks of the Ford Motor Company's corporate structure, Dean's testimony that he would have progressed to a level "LL3" and eventually to an "LL2" is only speculation. There is no certainty that but for the injuries he suffered in the boating accident, he would have attained those levels of employment with their concomitant salaries and fringe benefits.

20. Ford Motor Company has continued to employee Dean throughout his recuperation and has assured him that he has a job there for the rest of his life. He is currently employed in the dealer contracts unit.

21. Dean has not sustained any loss in past wages and will not suffer any loss of future earnings in spite of the fact that he may not attain any certain position to which he once aspired.

22. The following damages are awarded to remedy the injuries experienced by plaintiff Joseph Dean: $341,288.56 in past medical expenses; $40,000.00 in future medical expenses; $300,000.00 for past pain and suffering; $100,000.00 for past mental and emotional distress; $100,000.00 for future pain and suffering and disability; $50,000.00 for future mental distress; $50,000 in past loss of services to his wife and family; and $50,000.00 for future loss of services to his wife and family.

23. The following damages are awarded to remedy the injuries experienced by plaintiff Rebecca Dean: $100,000.00 for past loss of consortium, society, and companionship; $250,000.00 in compensation for the value of her past and future services in tending to her husband's injuries and disabilities; and $50,000 for future loss of consortium, society, and companionship.

24. Insofar as the Conclusions of Law below are dependent upon certain facts, the court finds facts consistent with those conclusions.

# CONCLUSIONS OF LAW

1. This action is subject to admiralty jurisdiction and federal maritime law applies. See Norfolk Southern Ry. Co. v. Kirby, 543 U.S. 14 (2004).

2. Admiralty jurisdiction and the application of maritime law does not preclude the application of state law when necessary. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 546 (1995).

3. A vessel operator owes passengers aboard his vessel a duty of reasonable care under the circumstances not to injury them and to warn them of any dangers of which he knows or should know. Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 74 (6th Cir. 1990).

4. In this case, defendant Paul Shamo's negligent conduct cause the injuries to plaintiffs Joseph and Rebecca Dean.

5. Under the doctrine of *respondeat superior*, an employer may be vicariously liable for an employee's actions that are committed within the scope of his or her employment. Helsel v. Morcom, 219 Mich. App. 14 (1996).

6. An employer can be held liable where the employee could have been promoting or furthering the employer's business or if the employee commits a tort while involved in a service of benefit to the employer. Bryant v. Brannen, 180 Mich. App. 87, 98 (1989).

7. Vicarious liability may arise even where the employee's action was not specifically authorized if the act is nevertheless so similar to or incidental to conduct that is authorized, taking into consideration such matter as whether the act is commonly done by the employee. Id. at 99-100.

8. In this case, defendant Paul Shamo was acting within the scope of his employment with defendant Taylor Ford when he caused the injuries to Plaintiffs. Therefore, defendant Taylor Ford is vicariously liable for the negligent acts of it president and employee Paul Shamo.

9. Defendants Taylor Ford and Paul Shamo are jointly and severely liable for the damages outlined in the Findings of Fact.

10. "One of the essential and longstanding features of substantive admiralty law is that contributory negligence can be considered only in mitigation of damages." Carey v. Bahama Cruise Lines, 864 F.2d 201, 207 (1st Cir. 1988).

11. Although Defendants argued that the award of damages in this case must be reduced because of the alleged contributory negligence of Dean by his own intoxication at the time of the accident and his knowledge that Shamo was intoxicated and unfit to operate the boat in a safe manner, the court will not reduce the award.

12. There was sufficient evidence presented at trial to find that Dean himself was intoxicated and also that he should have known that Shamo was unfit to operate the boat safely; however, there was no evidence to show that Dean could have operated the boat safely and no evidence to show that anything Dean did or did not do contributed to the proximate cause of his injuries.

13. Plaintiffs are entitled to judgment as a matter of law.


                s/John Corbett O'Meara
                United States District Judge

Date: March 24, 2008


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 24, 2008, by electronic and/or ordinary mail.

                s/William Barkholz
                Case Manager